## CAMPBELL ETC. CO. v. W. H. HICKOK.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued January 22, 1890—Decided March 2, 1891.
[To be reported.]

(*a*) By an instrument styled a "lease," the plaintiff "let and demised for use" to the defendant a printing press, at the rent or hire of $3,000, payable in monthly instalments of $100 each, "to be further evidenced by the lessee's notes bearing legal interest, . . . . which notes are not to be considered as payment of said instalments." The lease stipulated further:

(*b*) That if the lessee should fully perform his part of the agreement, he might purchase the press at the end of the term by paying $10 in addition to the payments for rent already made, and the lessee would thereupon give him a bill of sale for the press; but if the lessee should make default, the lessor might repossess himself of and enjoy said property "as though these presents had never been made:"

1. In a suit on certain of the notes given under the agreement, the affidavit of defence averred that the plaintiff, at a date subsequent to the maturity of the notes in suit, took possession of the press in the exercise of the right to do so reserved in the lease. In such case, it was not error to refuse to enter judgment for the plaintiff for want of a sufficient affidavit of defence.

2. The notes not being given in satisfaction of the agreement, or of the hire of the property, but the lease and the notes being part and parcel of one transaction, when the agreement was rescinded by the action of the plaintiff with like effect as though it "had never been made" the notes fell with it for want of consideration, notwithstanding their prior maturity.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 180 July Term 1889, Sup. Ct.; court below, No. 321 March Term 1889, C. P. No. 4.

On May 4, 1889, the Campbell Printing-Press & Manufacturing Company brought assumpsit against William H. Hickok upon six promissory notes for $100 each, drawn by the defendant to the order of the plaintiff, five of them being dated August 23, 1888, and payable four, five, six, seven and eight

months after date, respectively, and the sixth being dated October 1, 1888, and payable six months after date; each of the notes bearing interest from date.

The defendant filed an affidavit averring a defence to the whole of the plaintiff's claim as follows:

" The plaintiff, by two separate leases in writing, dated respectively August 7, 1888, and August 27, 1888, let and hired for use to the deponent two presses for printing purposes, for each of which the price was to be $3,000.   The sum of $800 was paid on one of said presses, and as to each the balance due was to be paid by notes of $100 each.   Three of these notes, amounting to the sum of $300, have been paid to the plaintiff by the deponent and the company of which he was the chairman.   By the terms of the leases, when default was made in the payment of any note, the lessor, who was the plaintiff herein, was given authority to re-take possession of the said presses. Default having been made in payment of some of the notes, the plaintiff has taken back into its own possession the two presses, and the deponent claims that under the said leases it cannot proceed to collect the amount due on said notes."

The plaintiff having taken a rule for judgment for want of a sufficient affidavit of defence, the defendant, with leave of the court, filed a supplemental affidavit, making the following averments:

" The two presses mentioned in the affidavit of defence were taken possession of by the plaintiff on or about the third day of May, 1889, as nearly as the deponent can state, the fact being that the personal property of the Art Lithographic & Printing Company, into whose possession these presses came after their purchase by the deponent, was levied upon by the sheriff about that date, and it was at that time that the plaintiff took these presses into its own possession.   The deponent annexes hereto copies of the leases which have been furnished him by the plaintiff, under and by virtue of the provisions of which the notes in suit were given."

The material provisions of the lease dated August 7, 1888, a copy of which was appended to the supplemental affidavit, were as follows:

" Witnesseth, That the lessor has let and hired for use, and by these presents doth let and hire for use, unto the said

Statement of Facts.

lessee, the following described machinery and personal property : . . . . for the term of    months from the date of receipt of bill of lading, at the rent or hire of $3,000 payable in instalments as follows, namely :

" Said instalments to be paid as follows : One hundred dollars every thirty days from the date of erection of press. . . . . The said several instalments to be further evidenced by the lessee's notes, bearing legal interest, to be given by the lessee on receipt of said bill of lading, but which notes are not to be considered as payment of said instalments. . . . .

" And it is further agreed by and between the parties to these presents, that if default shall be made in the payment of the first or any of the above named instalments, then it shall be lawful for, and the lessor may re-enter into possession of the personal property above described ; may enter upon the premises of the lessee and upon any other premises where the same may be found, and take away, repossess and enjoy the said personal property as though these presents had never been made, without any liability, accountability or responsibility of the lessor to the lessee, or any other person or persons, for so doing.

" And the lessee doth covenant and agree that . . . . . at the expiration or sooner determining of the said term, he will quit and surrender and deliver up possession of the said personal property to the lessor, in like good order and condition, reasonable use and wear thereof excepted.

" And the lessor doth hereby covenant and agree that the lessee, on paying the above specified instalments, and performing the covenants aforesaid, shall and may peaceably and quietly have, hold, use and enjoy the said personal property for the said term.

" And the lessor doth hereby covenant, promise and agree to and with the lessee, that if the lessee shall well and truly keep and perform the covenants herein made, and shall make no default in the payment of the aforesaid instalments, as the same shall become due and payable, and this lease shall not be sooner determined by mutual consent, or otherwise, that the lessor will make, execute and deliver to the lessee a good and sufficient bill of sale for said personal property, the consideration whereof shall be the amount of the above-named payments

received on account of the rent for the use of the same for the aforesaid term, and $10 additional, payment of said $10 after expiration of lease being a condition precedent to right of purchase. . . . . ."

The material provisions of the lease of August 27, 1888, were identical with those of the first lease, above given, except that the monthly instalments of $100 were to commence maturing six months from the date of erection of the press.

The rule for judgment for want of a sufficient affidavit of defence having been discharged, without opinion filed, the plaintiff took this appeal, specifying that the court erred:

1. In discharging the rule for judgment.

2. In not entering judgment for the plaintiff for want of a sufficient affidavit of defence.

*Mr. Joseph Savidge*, for the appellant:

There is but one question to be decided, to wit: Is the plaintiff entitled to recover the stipulated monthly rental for the use of the presses during the time they were in the defendant's possession under the contract of letting, notwithstanding the fact that subsequent to the time the rent accrued the plaintiff took possession of the presses?

1. It is difficult to understand why the court refused to enter judgment for the plaintiff. The contracts between the plaintiff and the defendant being in writing, their construction was for the court: Forrest v. Nelson, 108 Pa. 481. These leases are the same in all formal parts as the one which was held by this court, in Rowe v. Sharp, 51 Pa. 26, to create a bailment for use; and, even if the contracts now in question were to be held conditional sales, as to creditors, they would be good as bailments, between the parties: Brunswick Co. v. Hoover, 95 Pa. 512. The bailment of a chattel for use, with a provision for a sale in case the price of the chattel is fully paid, includes two distinct contracts, the one taking effect, if at all, when the other is spent, and such contracts are valid: Rowe v. Sharp, 51 Pa. 26; Enlow v. Klein, 79 Pa. 488; Stadtfeld v. Huntsman, 92 Pa. 53; Wertz v. Collender, 20 W. N. 59, and cases therein cited. As the lessee in this case failed to comply with the conditions of the contracts, the matter remained a bailment throughout: Edwards' App., 105 Pa. 103.

Arguments.

2. The leasing of a chattel is analogous to the leasing of a house, and it will not be pretended that when a landlord enters for default in the payment of rent, he is barred from recovering the rent which accrued during the tenant's possession. Such entry suspends only the rent of the current month, quarter, etc., and leaves unimpaired the landlord's title to rent previously accrued, and his right to sue therefor: Kessler v. McConachy, 1 R. 435; McCleary v. Allen, 2 P. & W. 144; Tiley v. Moyers, 43 Pa. 410. If he be not barred, then by parity of reasoning the plaintiff should not be barred from recovering the rent in this case. It may be argued that as the defendant has already paid $1,100 for the rental of the presses, which if he had performed his part of the contract would have been credited upon their purchasing value, and that as he would then be entitled, upon payment of the sum of $10, in addition to all the instalments of rent, to receive a bill of sale for the presses, it is a hardship on him to make him pay any more after the plaintiff has re-taken them. The answer to this would be:

3. (a) The defendant had the use of the presses during the time covered by the payment of the $1,100, and also the time covered by the instalments now sued for, and has profited thereby. (b) The contract is in writing, and therefore its legal effect must be gathered from the writing itself, and it must be enforced according to its plainly expressed written terms, unless it is contrary to public policy, which is not the case in this instance: Tufts v. Spengler, 20 W. N. 62. (c) By his contract, the defendant agreed that the rental named in the lease was fair and proper, and having failed in the fulfilment of his part of the contract, the loss or hardship if any, has been occasioned by his default and not through any fault of the plaintiff. (d) The plaintiff not being in default, should not be punished for the default of the defendant; yet if the decision of the lower court be sustained, the plaintiff will suffer a loss, as the presses are now second-hand machinery, and therefore, like all other machinery which has once been used, depreciated at least one third in value.

*Mr. Walter E. Rex*, for the appellee.

1. There may be some analogies between the leasing of a

chattel and of a house as stated by the plaintiff, but the anal
ogy will fail when, as in the present case, the consideration
named in the lease is the full value of the chattel, and the
monthly rental is a fractional part thereof, so arranged as to
complete the full payment of said consideration in a definite
number of months. In the case of the renting of a house, the
rent is not fixed with a view to ultimate purchase, and, there-
fore, represents only a certain interest which the landlord
charges; but, in the present lease, the rent is a fixed part of the
purchasing price, and is larger than would be charged if rent
in the ordinary acceptation was intended.

2. The plaintiff claims that the written contract must be
enforced, and it stands upon its terms. If so, as it has not
provided for the probability of suit upon the notes, nor fixed
any method of ascertaining its damage by depreciation of the
presses, its case must fall. The contract only contemplates a
recovery of the presses, if default is made in payment of the
notes, and allows "reasonable use and wear;" and for this rea-
son the plaintiff's statement, " that the presses are depreciated,
like all machinery that has been used, at least one third in
value," cannot be accepted as fixing the damages incurred,
because "reasonable use and wear" is allowed by the lease,
and there has been no evidence given of any greater damage :
Brunswick Co. v. Hoover, 95 Pa. 508.

OPINION, MR. JUSTICE CLARK:

It is contended that the effect of the two contracts of the
seventh and twenty-seventh of August, 1888, was to constitute
Hickok a bailee for hire of the printing and job presses, rollers,
etc. The "leases" were not for any definite period of time ;
the space left for the insertion of the number of months con-
stituting the term was left a blank. Nor was the price per
month for the hire fixed in terms at any definite sum. In
form, the writing plainly imports a bailment of the property.
The Campbell Printing-Press & Manufacturing Company are
styled lessors, and Hickok a lessee ; the presses, rollers, etc.,
were, in terms, " let and hired " to the defendant for a " term,"
at a specified gross sum, payable monthly, with a provision for
a surrender or return of the property by the lessee to the less-

ors at the expiration of the term; the entire rent or hire was fixed at $3,000, payable in monthly instalments of $100 each, and it may be implied, perhaps, that the "term" was thirty months, for, at the end of that period, if the instalments were all promptly paid, the lessee had the option either to surrender or to purchase the property upon the payment of ten dollars, the payment of this sum being declared a condition precedent to the purchase. But the right of the lessor, during the term, to re-possess himself of the property upon the lessee's default in payment of any of the instalments, did not rest in any general principle of the law of bailment, but was exercised by reason of the agreement to that effect.

The agreement as to this was as follows:

"And it is further agreed by and between the parties to these presents, that, if default shall be made in the payment of the first or any other of the above-named instalments, then it shall be lawful for, and the lessor may, re-enter into possession of the personal property above described; may enter upon the premises of the lessee, and upon any other premises where the same may be found, and take away, re-possess, and enjoy the said personal property as though these presents had never been made, without any liability, accountability, or responsibility of the lessor to the lessee, or any other person or persons for so doing."

The rights of the parties were fixed by the agreement, which was the law to them. The company had these two remedies for the enforcement of their rights: one, in affirmance of the contract by suit upon the notes as they matured; the other, in rescission of it by re-possessing themselves of the property, in which case the company were to have and enjoy the said personal property as though the contract "had never been made." The notes were not given in satisfaction of the agreement, or of the hire of the property. This seems to be conceded by both parties. The agreement and the notes were part and parcel of one transaction: if the agreement "had never been made," the notes would not have been given; and when the agreement is rescinded, with like effect as if it "had never been made," the notes fall with it for want of consideration.

We are of the opinion that upon a fair and reasonable con-

struction of this contract the learned court was right in refusing to enter judgment for want of an affidavit of defence.

The writ of error is dismissed at the cost of the plaintiff, but without prejudice to their right to trial by jury and a second writ of error after final judgment.