Scull et al., Appellants, *v.* Reiley.

Argued October 3, 1940; reargued March 24, 1941.
Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN,
PATTERSON and PARKER, JJ.

*Joseph Levy,* for appellants.

*Clarence L. Shaver,* with him *Daryle R. Heckman,*
of *Shaver & Heckman,* for appellee.

OPINION BY MR. JUSTICE DREW, March 31, 1941:

In this action in assumpsit, the learned court below,
after having sustained the questions of law raised by
the affidavit of defense in the nature of a demurrer,
directed judgment to be entered in favor of defendant;
and from the entry thereof plaintiffs have taken this
appeal.

From an examination of the statement of claim and
the accompanying exhibits, it appears that on May 23,
1929, George R. Scull, Anna B. Scull and Robert S.
Scull entered into an agreement whereby they rented,
or conditionally sold, to Henry B. Reiley, defendant,
the plant of the *Somerset Herald,* a weekly newspaper
of general circulation, and the job printing business con-
ducted in connection therewith, at a total rental or con-
sideration of $30,000, of which $5,000 was paid upon

execution of the contract, and the balance agreed to be paid in annual instalments during the period of four years. On January 12, 1933, defendant being in default as to all instalments, with the exception of the initial payment of $5,000, the parties entered into a new contract, substantially in the same form as that of the original agreement, but superseding and in substitution therefor, whereby the property was relet, or conditionally resold, to defendant for the sum of $25,000, payable in annual instalments during the period of three years, and interest on the sum of $25,000 from May 23, 1929. On June 17, 1936, George R. Scull and Anna B. Scull having died and defendant having defaulted in the payment of all instalments and interest provided for in the second agreement, a third contract was executed by Robert S. Scull and the representatives of George R. Scull and the heirs of Anna B. Scull. This latter agreement, being also intended as a novation for the prior contracts, provided for the reletting, or conditional reselling, of the property to defendant for the sum of $25,000, payable in instalments during a further period of three years from the date of this latter contract, as follows: the amount of $7,500 each for the first and second years, payable $625 per month, and $10,000 for the third year, payable $750 per month for the first ten months and $1,250 per month for the remainder of that year, and interest payable presently at the rate of 5% on the sum of $25,000 from May 23, 1929, the date of the original contract. This agreement, as well as the prior ones, contained, inter alia, a provision that title to the property was to remain in the lessors, or sellers, until the entire amount of the rental, or purchase price, and the additional sum of $1, was paid, at which time they agreed to execute and deliver to defendant a bill of sale for the property; and also provided that in case of default, the lessors, or sellers, had the right to repossess the property and to recover damages for any injury to it, together with any expenses

incurred by them in recovering possession, as well as the "rental", which, under the express terms of the agreement, includes the interest on the sum of $25,000, to the time of repossession. Each agreement, when executed, was entered in the Conditional Sales Docket in the office of the Prothonotary of the Court of Common Pleas.

On August 21, 1936, defendant having defaulted in the payment of the July and August instalments of $625 each, as well as in the interest due on the sum of $25,000, plaintiffs repossessed themselves of such part of the machinery and equipment pertaining to the business as remained of that which had been delivered to the defendant on May 23, 1929, and gave written notice to him that unless the property was redeemed within ten days, it would be sold at public sale and the defendant held responsible not only for the costs and expenses of retaking and sale of the property, but also for the balance of the "rental" due. The defendant did not redeem the property and it was sold at public sale for the sum of $10 to the highest bidder, the Somerset Trust Company, for the use of all plaintiffs. Thereafter the plaintiffs filed a statement of claim and defendant, without answering the averments thereof, filed an affidavit of defense raising questions of law. The learned court below sustained the questions so raised, on the ground that the statement of claim showed upon its face that the plaintiffs by repossessing the property availed themselves of an alternative remedy provided by the agreement, whereupon all rights of action thereunder determined as of the date of the exercise of such right. With this interpretation of the contract of June 17, 1936, we cannot concur.

In determining this controversy we deem it needless to decide whether the contract of June 17, 1936, was intended as a lease or as a conditional sales agreement, since the principle of law involved is applicable whether it be one or the other. While it is well settled, as in-

dicated by the cases cited by the learned court below, that where an agreement is drawn in the alternative and gives the lessor, or seller under a conditional sales contract, the right either to repossess the property upon default, or to collect the rental, or the unpaid purchase price, such lessor, or seller, can either collect the amount due under the terms of the agreement in affirmance thereof, or rescind the contract and repossess the property, but he cannot do both: *Campbell etc. Co. v. Hickok,* 140 Pa. 290, 296; *Scott, to use, v. Hough,* 151 Pa. 630, 634; *Road Roller Co. v. Schlimme,* 220 Pa. 413, 419; *Star Drilling Mach. Co. v. Richards,* 272 Pa. 383, 385; nevertheless, it is equally well established, as shown by other cases cited by the learned court below, that if it is plainly expressed in the contract, as was done in the instant case, or is a necessary implication from its terms that these remedies are cumulative, then the lessor, or seller under a conditional sales contract, can repossess the property, as well as collect the rental, or unpaid purchase price: *Seanor & Bierer v. McLaughlin,* 165 Pa. 150, 156; *Ketcham v. Davis,* 31 Pa. Superior Ct. 583, 585. In *Rome S. & S. Station v. Finch,* 120 Pa. Superior Ct. 402, the agreement provided in case of default for the repossession of a motor truck and also for the collection of the instalments of rental. There the court said (p. 407): "The judgment in such event must be restricted to the instalments of rental due and unpaid at the time the plaintiff redelivered the truck in response to the owner's demand."

Paragraph 5 of the agreement here under consideration provides: "It is agreed that if default shall be made by the Buyer at any time in the payment of any instalments of rent or interest . . ., the said tenancy shall forthwith cease and determine, at the option of the Sellers, and it shall be lawful for them to retake and repossess themselves of said property as though the same had never been rented. *Upon any determination of this agreement, the Sellers shall have the right to*

534

*collect rental, at the rate hereinbefore agreed upon, up to the time of repossessing themselves of the property* and to recover damages for any injury which may have been done to it, as well as for any expenses or costs incurred by them in recovering possession thereof." (Italics added.) Under this clause of the contract, by which the rights of the parties are fixed and which is the law as to them, it is obvious that they have expressed, in as clear language as could be used, that the remedies in case of default were to be cumulative, and therefore, although plaintiffs have repossessed the property, they are still entitled to collect the "rental" due to the time of repossession, i. e., the two monthly instalments of $625 each, and the interest, on the sum of $25,000 at five per centum per annum from May 23, 1929, to June 17, 1936, the date of execution of the third contract, as well as interest on the two monthly instalments from the time each became due and payable to the date of retaking of the property.

The obvious intent of the parties, ascertained from a careful study of the entire agreement, was that the agreed "rental" for the property was the sum of $25,000 (payable in monthly instalments) *and interest on that amount from May 23, 1929* (payable forthwith). Therefore, when, by paragraph 5 of the contract they provided that in case of default "Sellers shall have the right to collect *rental* . . . up to the time of repossessing . . . of the property" (Italics added), they clearly and definitely expressed an intention for the collection of both sums which were due at the time of retaking; that is the interest on the sum of $25,000 from May 23, 1929, and for the two monthly instalments of $625 each.

While the contract does provide for damages for any injury which may have been done to the property and for any expense incurred by the plaintiffs in recovering possession thereof, no such damages are recoverable, since there is no allegation whatever contained in the statement of claim that the property was damaged or

that plaintiffs suffered any expense in securing repossession. Furthermore, no recovery can be had for the loss alleged to have been suffered on account of the resale of the property after its repossession, since the contract does not so provide. For the reasons herein set forth, the assignment of error must be sustained.

Judgment reversed, and record remitted for further proceedings consistent with this opinion.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I agree with the majority opinion that "where an agreement is drawn in the alternative and gives the lessor, or seller under a conditional sales contract, the right either to repossess the property upon default, or to collect the rental, or the unpaid purchase price, such lessor, or seller, can either collect the amount due under the terms of the agreement in affirmance thereof, or rescind the contract and repossess the property, but he cannot do both" (citing cases). I also agree, as stated by the majority opinion: "It is equally well established . . . that if it is plainly expressed in the contract . . . or is a necessary implication from its terms that these remedies are cumulative, then the lessor, or seller under a conditional sales contract, can repossess the property, as well as collect the rental, or unpaid purchase price." In the instant case the rentals are "cumulative" *only to the extent set forth in paragraph 5 of the agreement between the parties.*

I do not agree with the majority opinion that paragraph five gives the lessors the right to collect not only "the rental due at the time of repossession, i. e., the two monthly instalments of $625 each" *but also* "the interest on the sum of $25,000 at five per centum per annum from May 23, 1929, to June 17, 1936, the date of execution of the third contract. . . ." There is absolutely nothing in paragraph five which gives the lessors the right to collect any interest on the $25,000 purchase price.

In the agreement between the parties dated June 17, 1936, as set forth in plaintiffs' statement of claim, it is provided, inter alia: "That the Sellers have . . . let unto the Buyer, the newspaper plant and job printing business formerly conducted by the Sellers, in the Borough of Somerset, . . . all of which are particularly enumerated in the schedule hereto annexed and made a part hereof . . . for the term of three years from the date hereof, at the rent of $7,500 for the first and second years, payable $625.00 per month in advance for the first ten months of said year, and $1,250.00 per month for two months of said year; together with interest at the rate of five (5) per cent. per annum from May 23, 1929." In other words, the interest *has exactly the same status* under this contract as the purchase price of $25,000.00 and no more. The majority opinion holds that the *principal* sum of $25,000.00 provided for in the agreement *cannot* be collected by the sellers. With this I agree and I submit that neither can the *interest* be collected.

The majority opinion takes the position that in addition to the two monthly installments due, the sellers can collect the interest on the sum of $25,000 at 5% per annum. As paragraph five, which, as the majority opinion states, "is the law as to" the parties, is completely silent as to any interest payments, I find no warrant for the holding that the sellers can collect interest on the principal which, it is conceded, cannot be collected. The sellers having *repossessed* the property and determined the agreement, their rights are those given them in paragraph five, which paragraph in unequivocal language declares that "upon any determination of this agreement, the Sellers shall have the right [1] to collect rental, at the rate hereinbefore agreed upon, up to the time of repossessing themselves of the property and [2] to recover damages for any injury which may have been done to it, and [3] as well as for any expenses or costs incurred by them in recover-

ing possession thereof." No other items whatsoever are mentioned in paragraph five. Since no other items than *"rental", "damages"* and *"expenses"* are mentioned in that paragraph, the sellers can claim no rights as to other items. This is so obvious that it is not necessary to invoke the maxim "expressio unius est exclusio alterius", but this is a case where the maxim clearly applies. This court has frequently recognized this maxim's logical value. In *Catawissa R. R. Co. v. P. & R. Railway Co.*, 255 Pa. 269, 99 A. 807, we held that where a lease specifically designates certain taxes which the lessee is to pay, and subsequently other taxes of a different character are levied upon the property, the principle expressio unius est exclusio alterius applies and the lessee will not be required to pay the additional taxes. See also *Green & Coates Sts., Phila. Passenger Ry., v. P. R. T. Co.*, 264 Pa. 424, 107 A. 784. In *Hollenback Coal Co., v. Lehigh & Wilkes-Barre Coal Co.*, 219 Pa. 124, 67 A. 987, this court said in applying the maxim expressio unius est exclusio alterius: "In the face of what is expressly given to the lessee in return for the rentals or royalties to be paid by it, it cannot ask that the law give it more. The parties agreed what the one should pay and just what the other should get for its money, and the appellee, having got all that the lease gave it, cannot get more."

It should be noted that in paragraph five it is provided that in case of default by the buyer "in the payment of any instalments of rent or interest, or in the payment of any premiums of insurance, as the same shall become due and payable, or if the Buyer shall remove any of the property herein agreed to be sold from the premises aforesaid, without the previous written consent of the Sellers, or shall fail to comply with the provisions of Paragraph 4 hereof, then and in such case, the said tenancy shall forthwith cease and determine, at the option of the Sellers, and it shall be lawful for them to retake and repossess themselves of said prop-

erty *as though the same had never been rented,*" (italics supplied.)

In *Star Drilling Machine Co. v. Richards*, 272 Pa. 383, there was a similar provision in the contract. There certain machinery was leased and the agreement provided that if default was made as to any of the payments, plaintiffs "might repossess themselves of [the machinery] without process of law." To secure one of the instalments of rent, the note in suit was given. Because later payments were not made, the note was protested, suit was brought, and thereafter plaintiffs took possession of the machinery. At the trial a verdict was directed for plaintiffs. Defendant's point for binding instructions was refused and his motion for judgment n. o. v. was dismissed. Upon appeal to this Court it was held, in an opinion by Justice SIMPSON: "Where, as here, the agreement provides the lessors 'might repossess themselves of [the machinery] . . . as though these presents had never been made,' the only possible conclusion is that 'if the agreement "had never been made," the note would not have been given; when the agreement is rescinded, with like effect as if it "had never been made," the note fell with it for want of consideration.' . . . The judgment of the court below is reversed and judgment is here entered for defendant n. o. v."

In *Seanor & Bierer v. McLaughlin*, 165 Pa. 150, 30 A. 717, this court held that where a contract of bailment in the form of a lease provides for the delivery of a machine at a certain hire, payable in instalments, the lessor to retain title until the last instalment is paid, and the contract is accompanied by a bond with a warrant of attorney to confess judgment, "as collateral to secure the rental," the lessor may, upon default in the payment of one of the installments, either rescind the contract and take possession of the machine, or enter judgment upon the bond, and that the two remedies are however not cumulative, and if the lessor re-

sumes possession of the machine, he cannot enter judgment upon the bond. See also *Ketcham v. Davis,* 31 Pa. Sup. Ct. 583, and *In Re Orpheum Circuit, Inc.,* (Dist. Ct. S. D. N. Y.), 23 F. Supp. 727.

In 24 R. C. L., p. 491, sec. 785, it is stated: "The right of the seller to recover the instalments of the price and his right to retake possession of the subject matter of the sale are regarded as inconsistent, and, after he has exercised his right to retake possession, it is generally held that he cannot recover unpaid instalments of the price, though the promise of the buyer to pay the same was unconstitutional or was evidenced by notes or the like." (Citing numerous cases.)

*Kelley Springfield Road Roller Co. v. Schlimme,* 220 Pa. 413, 69 A. 867, was an action upon thirteen promissory notes given as evidence of monthly instalments of payments due for two steam road rollers sold on a "lease contract." These notes were to draw interest at 6%. The lease gave the lessor the right to repossess the rollers in case of default in payment of the notes, etc. If payments were duly made the lessee could secure a bill of sale for the machines for one dollar each. Claiming default the plaintiff repossessed the rollers and *also sued for the principal and interest* on the notes. It was held that plaintiff could *not* maintain this latter action. This Court said: "The failure to make payments as they became due was a breach of the contract and the plaintiff had the right to rescind 'and take possession of, and remove same without trespass.' . . . The plaintiff's assertion of its right to rescind by repossessing itself of the machines was the end of its alternative right to enforce the agreement by compelling payment of the consideration money."

In *Auto Security Co., Inc., v. Canelli,* 80 Pa. Superior Ct. 43, Judge KELLER, speaking for that Court, said: "Under the terms of the lease it was optional with it either to enter judgment for the balance of the entire rental or purchase money reserved in the contract, or

to retake possession of the automobile [citing cases]. . . . Justice would not permit it to retake the car and at the same time demand payment of its value."

In the instant case the remedies of the seller were cumulative only *to a limited extent.* What those limits are is stated in clear language. The word "rental" in the last sentence in paragraph 5 of the agreement of June 17, 1936, clearly does *not* include interest on $25,000.00, which sum is named in paragraph one of the agreement as the *value* of "the newspaper plant, equipment, etc." In other words, $25,000 was the purchase price of the plant, etc., and any interest due was interest on that purchase price. *Rent* as used in paragraph five is quite a different thing than interest on the purchase price or on any instalment of the purchase price. In the very beginning of paragraph five the word "rent" and the word "interest" appear with the disjunctive "or" between them. Upon the failure to pay "rent or interest" or insurance premiums or upon certain other breaches of the lease, "the tenancy shall forthwith cease and determine, at the option of the sellers, and it shall be lawful for them to retake and repossess themselves of said property as though the same had never been rented." Immediately thereafter the cumulative clause sets forth that "upon the determination of this agreement" the sellers shall have the right "to collect rental up to the time of repossessing themselves of the property", but *no right is given to collect interest,* and, as above pointed out, the parties in their own contract treat "rent" and "interest" as two things utterly distinct.

The cumulative clause in the lease (which is the last sentence in paragraph five) clearly does not include *either the principal of $25,000 or any interest on it or any interest on any instalment of it.* The word "rental" as used in that clause means nothing but rental at the rate of $625.00 a month in advance, from the date of the contract, to wit: June 17, 1936, up to the time of

the sellers' repossessing themselves of the property, which was in the third month of the contract, i. e., on August 21, 1936. That is exactly what it says and the language admits of no other interpretation.

The reclaiming of the goods was a renunciation of the contract *except as expressly provided,* and *no provision* for the collection of *interest* after repossession of the property *was* provided for.

Mr. Justice PATTERSON and Mr. Justice PARKER concur in this opinion.