Matter of **ADRIAN RESEARCH AND CHEMICAL CO., Inc., Bankrupt,**

**William M. Kirkpatrick, Appellant.**
**No. 12847.**

United States Court of Appeals
Third Circuit.

Argued May 8, 1959.

Decided Aug. 25, 1959.

John E. Landis, Lansdale, Pa., for appellant.

Bertram Bennett, Philadelphia, Pa. (Jenkins, Bennett & Jenkins, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal in a bankruptcy case from the Order of the United States District Court for the Eastern District of Pennsylvania affirming the Order of a Referee in Bankruptcy which denied the petitioner's claim status as a secured claim.

The single issue presented is whether the petitioner is deprived of the lien of his perfected secured claim because he took judgment against the debtor, issued execution and caused a levy to be made.

The facts are not in dispute. On September 10, 1957, the debtor, in consideration of an accumulation of rent arrearages in the amount of $7,600, entered into a security agreement with the petitioner, his landlord, creating a security interest in office, laboratory and plant equipment. The security arrangement was made pursuant to and perfected by compliance with, the Pennsylvania Uniform Commercial Code—Secured Transactions, Act of April 6, 1953, P.L. 3, Sec. 9–101 et seq., 12A P.S. Sec. 9–101 et seq.

Also, on September 10, 1957, as evidence of his obligation, the debtor executed and delivered to the petitioner a judgment note in the sum of $7,600, and judgment was entered thereon on September 12, 1957.

On March 12, 1958, because of the debtor's default, the petitioner issued execution on the judgment and caused a levy to be made on all of the debtor's personal property, which included the personal property covered by the security agreement. Bills were posted advertising the sheriff's sale.

A voluntary petition in bankruptcy was filed by the debtor on March 27, 1958, and on the receiver's application an order was entered in the bankruptcy proceeding on March 30, 1958, restraining the sheriff's sale.

Thereafter petitioner filed a reclamation petition in the bankruptcy proceeding. On September 22, 1958, the Referee denied the claim as a secured claim and allowed it as a general claim only. On September 30, 1958, petitioner filed his petition for review, and the Referee certified his Order for review to the District Court.

The District Court held, as did the Referee, that since the petitioner elected to issue execution and to levy on the assets of the debtor, he was barred from asserting a security interest to "retake" the personal property on the ground that the execution was inconsistent with the right to take possession: this conclusion was indicated by In re Elkins, D.C.E.D. Pa.1941, 38 F.Supp. 250, and In re Fitzpatrick, D.C.W.D.Pa.1923, 1 F.2d 445; nothing was found in the Pennsylvania Uniform Commercial Code to assist the petitioner. D.C., 169 F.Supp. 357.

The validity of petitioner's asserted lien is a question to be decided under Pennsylvania law, for it is not disputed that if petitioner has such a lien, he is in a protected position under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

The petitioner contends that under Section 9–501 of Pennsylvania Uniform

Commercial Code—Secured Transactions,[1] the execution and levy amounted to a foreclosure. The District Court and the Referee rejected this contention. In a new statutory framework,[2] we prefer not to engage in unnecessary interpretations where the final word rests with the local courts.[3] It is sufficient to state that if this contention of the petitioner is put to one side, at least the Code is not dispositive of the issue raised here.

■ The Pennsylvania courts have emphasized that distinct remedies may be used concurrently or alternately if they are consistent in purpose and kind; they must be inconsistent and not merely cumulative in order for the selection of one to operate as a bar to the pursuit of the other. Harper v. Quinlan, 1946, 159 Pa.Super. 367, 370–371, 48 A.2d 113. Again, lately it was said in Nuside Metal Products, Inc. v. Eazor Express, Inc., 1959, 189 Pa.Super. 593, at page 597, 152 A.2d 275, at page 278:

"Appellant also cites 18 Am.Jur., Election of Remedies, Section 12, to the following effect: 'Two modes of redress are inconsistent if the asser-

tion of one involves the negation or repudiation of the other, as where one of them admits a state of facts and the other denies the same facts or where the one is founded upon the affirmance, and the other upon the disaffirmance, of a voidable transaction.' Such a situation may exist where a bailor has the right either to sue upon a note or to recover'the property leased, in which event the exercise of either remedy acts as a waiver of the other. [Kelley Springfield] Road Roller Co. v. Schlimme, 220 Pa. 413, 69 A. 867; Jacob v. Groff, 19 Pa.Super. 144. However, in order to have the selection of one remedy operate as a bar to the pursuit of the other, or to compel an election between remedies, it must appear that the remedies sought to be enforced are inconsistent, and not merely cumulative. Harper v. Quinlan, 159 Pa.Super. 367, 48 A.2d 113. See also [In re] Messmore's Estate, 290 Pa. 107, 138 A. 81. As a general rule, a party may have as many remedies as the law gives provided they are consistent."

1. Act of April 6, 1953, P.L. 3, Sec. 9–501, 12A P.S. § 9–501:

"(1) When a debtor is in default under the security agreement a secured party may reduce his claim to judgment. * * * If the collateral is goods, he may in addition do one or more of the following * * *

"(a) foreclose the security interest by any available judicial procedure;
"(b) take possession of the collateral under Section 9–503;
* * * * * * *
"(3) The enumeration of rights in subsections (1) and (2) does not purport to be exhaustive. * * *"

2. The Uniform Commercial Code was a joint project of the American Law Institute and the National Conference of Commissioners on Uniform State Laws. Pennsylvania was the first state to adopt the Code substantially in the recommended form. As noted in the Opinion of the District Court, a modification has been suggested which provides that the lien of any levy upon the collateral by virtue of any execution based upon the judgment shall relate back to the date of the per-

fection of the security interest in such collateral.

3. The District Court and the Referee concluded that the word "foreclose" in Section 9–501(1) (a) should be taken in its literal sense, and noted that there was no procedure in Pennsylvania to foreclose an interest asserted against personal property. Although concededly this construction renders the provision meaningless, the justification offered is that the Code was written with a view to adoption in all states.

However, there is some authority for an equitable procedure in the nature of foreclosure: Smith v. Coale, 1877, 12 Phila. 177; Philadelphia Bank v. Aldridge, 1864, 5 Phila. 446. In any event, a court of Pennsylvania, recognizing that it was dealing with a statute of the state, and bearing in mind the requirements of the Statutory Construction Act, May 28, 1937, P.L. 1019, art. I, Sec. 1 et seq., 46 P.S. § 501 et seq., and particularly the admonitions of art. IV, Sec. 51, 46 P.S. § 551, could reasonably find adequate support for a conclusion different from that reached below, and one which gave content to the language involved.

The cases relied upon below deal with the intricacies of bailment leases and conditional sales. The taking of possession, or the rejection of possession and proceeding for the amount due, had substantive consequences which made the remedies thoroughly inconsistent. For example, in a bailment lease, the bailor's taking possession rescinded the contract and left no remedy against the bailee for the full purchase price. Kelley Springfield Road Roller Co. v. Schlimme, 1908, 220 Pa. 413, 69 A. 867. Nor as that case suggests, could the bailor affirm the contract, sue on the notes and also have possession. As pointed out in In re Fitzpatrick, supra, if the bailor affirmed the contract and sued on the notes, he affirmed ownership in the bailee and effectively destroyed a right to possession in himself. An approach with similar consequences is evident in the conditional sale contract, as appears from In re Elkins, supra.

■ The transaction here involved does not contain the elements of such niceties of legal form. The relationship of the petitioner to the bankrupt debtor was that of creditor and debtor, the debt being evidenced by the note. The chattels covered by the security agreement were collateral for the debt. The assertion by the petitioner of the note of obligation against the debtor in legal proceedings and his attempt to collect it by execution and levy can hardly be said to be inconsistent with the assertion of his claim upon the collateral.

The remedies are consistent both in kind and purpose, for each results in the application to the debt of the chattels covered by the security agreement and each has as its objective the reduction of the debt. The absence of inconsistency is highlighted by respondent's concession that petitioner could have proceeded first against the collateral, and if a deficiency remained, proceeded by execution and levy against any other property of the debtor.

■ What respondent suggests is a requirement that the collateral must first have been exhausted, and unless this occurred the petitioner would lose his security by proceeding against the debtor to collect the debt. In the analogous case of a pledge, such is not the law of Pennsylvania. The holder of a note may maintain his action without realizing or attempting to realize upon the collateral. Harper v. Lukens, 1921, 271 Pa. 144, 112 A. 636. Absent an agreement to the contrary, the creditor is entitled to hold the collateral security until the debt is paid and is not under obligation to sell; it is only upon payment of the debt that the debtor is entitled to the collateral. National Bank of Fayette County v. Valentich, 1941, 343 Pa. 132, 135, 22 A.2d 724; Union Trust Co. v. Long, 1932, 309 Pa. 470, 478, 164 A. 346. In the latter case, the Pennsylvania Supreme Court referred with approval to In re Fulton's Estate, 1917, 65 Pa.Super. 437. There, the secured creditor pursued both remedies; the court said, at page 442 of 65 Pa. Super:

"But the appellant was also the pledgee of certain shares of bank stock which, through a trustee, he held as collateral security for the payment of his debt. Under the terms of the pledge he could not be compelled to surrender his security until his debt was paid in full. The insolvency or death of his debtor would in no way affect his right to the full use of his collateral. That right rested not on general laws disposing of the property of insolvent debtors, dead or alive, but on the contract of the parties. The fact that he thus had recourse to two funds in no way impaired his right to proceed against either or both so long as he did not claim or secure more than was justly due. As we said in [Re] Peckham's [Assigned] Est[ate], supra [35 Pa.Super. 330]: 'He was entitled to pursue all of his remedies and use all of his securities without having the efficiency of any one diminished by the fruits derived from any other, so long as the result of all was to give him less than his debt'; Miller's App[eal], 35 Pa. 481; Graeff's App[eal], 79 Pa. 146."

We can observe no essential factor in the case now before this Court which would place the petitioner in a different position, there being nothing in the security agreement to restrict the rights of the petitioner. The obligation of the debtor was to pay the debt, and neither he nor his successor, the trustee in bankruptcy, became entitled to the collateral security until the debt was discharged. It follows that the petitioner did not waive his right to rely on the collateral when he proceeded by execution and levy to enforce the judgment on the note against the debtor.

For the reasons stated the Order of the District Court will be reversed and the cause remanded for further proceedings not inconsistent herewith.